UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **CREATION SUPPLY, INC.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 19 C 6063 |
| ) | |
| **DAVID G. HAHN and DREW L. BLOCK,** ) | Judge Rebecca R. Pallmeyer |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Creation Supply, Inc. ("CSI") is an Illinois corporation that obtained liability insurance from Selective Insurance Company of the Southeast ("Selective"). This lawsuit arises from Selective's refusal to provide coverage when Plaintiff was sued for trade dress infringement in Oregon federal court. Plaintiff alleges that Selective's agents—Defendants David G. Hahn, a former claims attorney for Selective, and Drew L. Block, outside counsel for Selective— intentionally interfered with the insurance policy. Plaintiff also asserts a claim against Defendants for civil conspiracy, and a claim against Defendant Block for aiding and abetting the intentional interference. Plaintiff filed this lawsuit on September 2, 2019, in the Circuit Court of Cook County, Illinois. (*See* Compl. [1-1].) Defendants Hahn and Block, who are domiciled in New Jersey and Michigan, respectively, removed the case to federal court on September 10, 2019. (*See id.*) Defendants now move to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6). As discussed here, Defendants' motions to dismiss are granted, but Block's request for sanctions under 28 U.S.C. § 1927 is denied.

## BACKGROUND

In 2012, Plaintiff CSI was sued for trade dress infringement and related claims in the

United States District Court for the District of Oregon (the "Oregon Action"). (Compl. ¶ 10.)[1] At the time, Plaintiff held an insurance policy from Selective. (*Id.* ¶ 9.) Invoking the policy, Plaintiff asked Selective to provide a defense for the Oregon Action, but Selective refused. (*Id.* ¶¶ 11-12.) As discussed below, the ensuing coverage dispute generated numerous lawsuits in state and federal courts, including the instant case.

**A.    The Oregon Action and the Declaratory Judgment Action**

Plaintiff alleges that Defendant Hahn, then a claims attorney and employee of Selective, initially handled its request for a defense in the Oregon Action. (*See id.* ¶ 13.) On June 22, 2012, Hahn notified Plaintiff by letter that Selective was refusing the request and set forth Selective's reasoning. (*Id.*) Plaintiff alleges that on July 2, 2012, "in consultation with Hahn," Defendant Block filed a lawsuit in an Illinois state court, seeking a declaratory judgment that Selective had no duty to defend Plaintiff in the Oregon Action. (Compl. ¶ 15.)[2] At the time, Defendant Block was working as outside counsel for Selective.[3] On July 5, 2012, Plaintiff asked Selective to reconsider its decision denying the request for coverage. (*Id.* ¶ 16.) According to Plaintiff, Block denied the request for reconsideration on July 10, 2012, citing "virtually the same reasons" expressed in the June 22, 2012 letter. (*Id.* ¶ 17.) Plaintiff alleges that the reasons were "baseless." (*Id.* ¶ 19.) Plaintiff further alleges that it "could not afford to continue the Oregon Action" without Selective's assistance and was "forced" in July 2013 "to settle prematurely with a less than favorable outcome": an agreement that it would no longer sell or distribute the accused

---

[1]     The Oregon Action is *Too Marker Products, Inc. v. Creation Supply, Inc.*, No. 3:12-cv-00725-BR. (Compl. ¶ 10.)

[2]     That case is *Selective Insurance Co. of the Southeast v. Creative Supply, Inc.*, 12 CH 24438. (Compl. ¶ 15.)

[3]     The Complaint alleges only that Block is an attorney who worked for Selective; but Selective's complaint for declaratory judgment against Plaintiff shows that Block represented Selective while employed at a law firm in Chicago, Illinois. (*See* Compl. for Decl. J., Ex. E to Compl. [22] at 21.)

2

products. (*Id.* ¶¶ 20-21.) According to the Complaint, Plaintiff was not required to pay anything under the settlement. (*See id.* ¶ 56.)

On December 19, 2013, the Illinois state court ruled in Plaintiff's favor, concluding that Selective "owed [Plaintiff] a defense for the Oregon Action." (*Id.* ¶ 25.) Selective appealed that decision twice, but Plaintiff prevailed on both appeals. (*See id.* ¶¶ 32-33, 37, 79.) Plaintiff alleges that Selective brought the appeals "at Hahn's and Block's direction" and that Defendants "controlled and directed" the litigation. (*Id.* ¶¶ 32, 35.) According to Plaintiff, Hahn's and Block's involvement in the lawsuit violated Selective's own Claims Manual, which directs that "coverage litigation should not be handled by the adjuster responsible for the underlying claim." (*Id.* ¶ 36.) Plaintiff alleges that the provision is intended to "avoid conflicts of interest," and that "Hahn and Block ignored [it] for their personal benefit." (*Id.*)

**B.      Selective's Delays in Payment**

Following the state court ruling confirming Selective's duty to defend in December 2013, Plaintiff sent invoices to Block, documenting the fees and costs it had incurred in the Oregon Action and requesting payment. (*See id.* ¶¶ 38-39.) Defendants allegedly ignored those communications. (*See id.* ¶¶ 38-40.) In March 2014, Plaintiff alleges, Defendants twice tendered a settlement offer that Plaintiff rejected as unacceptably low. (*Id.* ¶¶ 41-44.) Plaintiff alleges that in August 2014, Defendants announced that Selective would not pay the invoiced fees and costs for the Oregon Action while Selective's appeal from the declaratory judgment was pending. (*Id.* ¶ 47.) According to Plaintiff, Defendants maintained this position despite filing objections in the Illinois state court to only a portion of the invoiced amounts. (*See id.* ¶¶ 48-51; *see also id.* ¶ 49 (alleging that, accounting for Selective's objections, "$164,291.39 in fees and expenses . . . was not in dispute"); *id.* ¶ 53 (alleging that in contemporaneous litigation notes, Hahn stated that he "hoped to negotiate" the "approximately $163,000 . . . down further").) In December 2014, having yet to be paid, Plaintiff filed a motion in the Illinois state court for enforcement of the December 2013 judgment. (*Id.* ¶¶ 58-59.) The court granted the motion, directed Plaintiff to serve

3

Selective with "a calculation of the amount due," and ordered Selective to pay within 14 days. (*Id.* ¶¶ 62-64.) According to Plaintiff, "[n]othing was paid . . . pursuant to [that] order." (*Id.* ¶ 65.)

In November 2015, Plaintiff took the deposition of David Richmond, Hahn's former supervisor at Selective. (*Id.* ¶ 67.) Six days after that deposition, Plaintiff alleges, Selective made its first payment on the invoices for the Oregon Action. (*See id.* ¶ 71.) Plaintiff alleges "on information and belief" that Selective made the payment "at the insistence of Richmond when he learned during his deposition that Hahn and Block were wrongfully withholding payments from [Plaintiff]." (*Id.* ¶ 73; *see also id.* ¶ 70 (alleging that Richmond "testified that Selective's policy is to typically pay invoices received from an insured's defense counsel as quickly as possible").) Plaintiff alleges that at some point before Selective made the payment, Block "requested a release from [Plaintiff]." (*Id.* ¶ 74).[4] Plaintiff further alleges that Block requested the release because he "knew that he and Hahn were liable for their acts of wrongfully withholding payments rightfully owed to [Plaintiff]." (*Id.* ¶ 75.)

According to Plaintiff, Selective's initial payment was not the full amount owed. (*See, e.g.*, *id.* ¶ 76.) Plaintiff alleges that Defendants "continued to intentionally withhold payment," and that Selective made the outstanding payments only after additional motion practice. (*Id.* ¶¶ 84-89.) Overall, Defendants allegedly took nearly two years to "pay the full amount" Selective owed for the defense of the Oregon Action. (*Id.* ¶ 89.)

**C.     The 2014 Federal Case**

On November 5, 2014 Plaintiff filed a lawsuit against Selective this district. (*Id.* ¶ 26.)[5] Plaintiff alleged that, by refusing to defend it in the Oregon Action, Selective violated Illinois

---

[4]     The Complaint does not state when this occurred or the terms of the release.

[5]     That case is *Creation Supply, Inc. v. Selective Insurance Co. of the Southeast*, No. 14 C 8856. (Compl. ¶ 26.)

4

Insurance Code Section 155. (*See* CSI First Am. Compl., Case No. 14 C 8856, Dkt. No. 16 ¶ 1.)[6] Section 155 "provides an extracontractual remedy to policyholders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable. . . . Pursuant to the statute, a plaintiff may . . . recover reasonable attorney fees and other costs, as well as an additional sum that constitutes a penalty." *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 519, 675 N.E.2d 897, 900-01, 221 Ill. Dec. 473, 476-77 (1996); *see* 215 ILCS 5/155. Plaintiff also alleged that Selective breached the insurance contract and violated the Illinois Consumer Fraud Act. (CSI First Am. Compl. ¶ 1.) For purposes of each claim, Plaintiff alleged that Selective's "willful, vexatious and unreasonable conduct required [it] to incur unnecessary legal fees and expenses in defending itself and seeking indemnification in the Underlying Oregon Action, and in pursuing payment from Selective." (*Id.* ¶¶ 82, 91, 102.)

Plaintiff's case against Selective is pending before Judge Charles P. Kocoras. In August 2015, Judge Kocoras denied Selective's motion to dismiss the Section 155 and breach of contract claims but granted its motion to dismiss the Illinois Consumer Fraud Act claim. (*See* Order, Case No. 14 C 8856, Dkt. No. 44.) After a bench trial on the issue of liability, Judge Kocoras found in Plaintiff's favor in December 2018. (*See* Dec. 2018 Findings of Fact and Conclusions of Law, Ex. K to Compl. ("Dec. 2018 Selective Order") [22] at 14-15.) Judge Kocoras determined that Selective had breached the insurance policy, and that its "failure to honor the insurance policy" was, beyond a reasonable doubt, "vexatious and unreasonable" in violation of Section 155. (*Id.* at 14; *see* Compl. ¶ 28.) He also concluded that Plaintiff was entitled to damages. (*See* Dec. 2018 Selective Order at 15.) As discussed below, Judge Kocoras awarded damages under Section 155 on November 12, 2019, while the motions to dismiss in this case were pending. (*See* Opinion, Case No. 14 C 8856, Dkt. No. 320 ("Nov. 2019 Damages Award").) On July 17, 2020,

---

[6] The court may take judicial notice of matters of public record, including court decisions, without converting a motion to dismiss into a motion for summary judgment. *See, e.g.*, *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119, 1137 n.14 (7th Cir. 2008).

Judge Kocoras directed the entry of final judgment under Federal Rule of Civil Procedure 54(b) in Plaintiff's favor on the Section 155 claim. (*See* Order, Case No. 14 C 8856, Dkt. No. 386.) On a date to be determined, there will be a trial "for consequential damages and fees, if any, sustained by [Plaintiff] due to Selective's breach of [the] insurance contract." (*Id.* at 1.)

Plaintiff's Complaint in the present case cites extensively to Judge Kocoras' findings of fact. For example, Plaintiff alleges that, according to Judge Kocoras, "Hahn became the de facto judge and jury on [Plaintiff's] claim" for insurance coverage from Selective. (Compl. ¶ 29 (quoting Dec. 2018 Selective Order at 4).) Plaintiff also alleges Judge Kocoras found that the "variety of reasons set forth by Selective in its . . . letter rejecting a duty to defend"—*i.e.*, in Hahn's June 22, 2012 letter—were "either false, irrelevant or specious." (Compl. ¶ 30 (quoting Dec. 2018 Selective Order at 14).) According to Plaintiff, Judge Kocoras determined that "[f]or whatever reason, the notion that Mr. Hahn was hell bent to deny CSI coverage in the Oregon litigation is inescapable." (Compl. ¶ 31 (quoting Dec. 2018 Selective Order at 12); *see also* Compl. ¶ 31 (quoting Judge Kocoras' findings that in formulating Selective's strategy, Hahn "ignore[d] key language in the Oregon complaint and . . . recommend[ed] a course of action based on a half-truth").)[7] Finally, Plaintiff alleges that Judge Kocoras found that "Selective's decision to continue the litigation in the Illinois Appellate Court and prolong the litigation perpetuated a position that was factually and legally flawed from the outset." (Compl. ¶ 35 (quoting Dec. 2018 Selective

---

[7] Additional context concerning the "half-truth" is warranted. In the Oregon action, the plaintiff alleged that CSI's "acts of infringement" were knowing and/or "the product of 'grossly negligent' activities." (*See* Dec. 2018 Selective Order at 6.) According to Judge Kocoras, Hahn ignored the allegation of gross negligence and advised his supervisor (Richmond) that Selective "appear[ed]" not to have a duty to defend "given the direct allegation that [CSI] had actual knowledge" of infringement. (*Id.* at 5.) Citing Hahn's deposition testimony, Judge Kocoras also determined that Hahn conducted a Google search to view the accused products in the Oregon Action; concluded that CSI had engaged in trade dress infringement; and "factored" that conclusion into his decision that Selective did not owe CSI a duty to defend. (*Id.* at 5.) According to Judge Kocoras, Hahn did not mention the Google search in his recommendation to Richmond. (*See id.* at 7.) In the case before this court, Plaintiff alleges that Judge Kocoras determined that Hahn was "less than truthful" with Selective and Richmond. (Compl. ¶ 102.)

Order at 11); *see also* Compl. ¶ 66 (alleging that in denying Selective's motion for reconsideration of the order allowing the Section 155 claim to proceed, Judge Kocoras remarked that some of Selective's conduct in state court "demonstrates on its face that Selective seeks to delay payment to [Plaintiff]").)

### D. Allegations Concerning Defendants' Personal Interests

According to Plaintiff, Defendants engaged in the conduct described above to benefit their personal interests. For example, Plaintiff alleges that "[i]n instituting and prosecuting the [declaratory judgment action] and subsequent appeals, Hahn and Block pursued their own interest in defending their actions in denying coverage and delaying payments, rather than Selective's interests or [Plaintiff's] interest." (*Id.* ¶ 95.) Plaintiff also alleges that "Hahn's *modus operandi*"—which was "fueled by his own conflicted self-interest" and in which "Block participated"—"has been to make [Plaintiff] litigate for every penny he knew" was owed or "drive [Plaintiff] into bankruptcy before it could collect anything." (*Id.* ¶ 99.) In addition, Plaintiff alleges that Defendants "did not keep Selective management properly informed as to the status of [Plaintiff's] claim or litigation against [Plaintiff], either in the" declaratory judgment action or the case before Judge Kocoras. (*Id.* ¶ 101.) Finally, according to Plaintiff, "Hahn's reputation has been harmed as a result of [Judge Kocoras'] finding in the Federal Action" (*id.* ¶ 103), and "[o]n information and belief, Block used the litigation with [Plaintiff] to advance his own career." (*Id.* ¶ 104 (alleging that Block was an associate at his law firm "when he sued [Plaintiff] in 2012," and later became a partner).)

### E. Plaintiff's Claims and Requests for Damages

Plaintiff asserts claims against Defendants for intentional interference with the insurance contract between Plaintiff and Selective (Count I) and civil conspiracy for the purpose of interfering with the contract (Count II). In addition, Plaintiff asserts a claim against Block for aiding and abetting Hahn's interference with the insurance contract (Count III). Plaintiff seeks "all available damages, including, but not limited to, consequential damages and unjust enrichment." (Compl.,

7

Prayer for Relief.)  Regarding unjust enrichment, Plaintiff appears to request disgorgement of the "compensation" Selective paid to Defendants while they were "wrongfully handling" Plaintiff's claim for a defense in the Oregon Action.  (*Id.*)  Regarding consequential damages, Plaintiff contends that Defendants owe the following:  fees and costs totaling (1) $397,758.43 that Plaintiff incurred "in the wrongful [declaratory judgment action] brought by Hahn and Block"; (2) $64,597.09 that Plaintiff incurred "in the wrongful first appeal brought by Hahn and Block"; (3) $53,408.75 that Plaintiff incurred "in the wrongful second appeal brought by Hahn and Block"; and (4) $267,924.12 that Plaintiff incurred "in its attempt to cover, by suing the maker of Mepxy markers, because of Hahn and Block['s] wrongfully inducing Selective to breach" the insurance policy.  (*Id.*)[8]

On November 12, 2019, Judge Kocoras awarded Plaintiff the exact relief it requests as consequential damages here (plus additional damages).  (*See* Petition for Fees Under 215 ILCS 5/155, Case No. 14 C 8856, Dkt. No. 292 at 8, 10-11, 15 (requesting $2,846,049.34, including the exact fees and costs labeled as consequential damages here); Nov. 2019 Damages Award at 11 (awarding $2,846,049.34); Block Reply in Supp. of Mot. to Dismiss ("Block Reply") [28] at 2-3 (noting same).)  As noted, Judge Kocoras has now entered final judgment on the Section 155 claim under Federal Rule of Civil Procedure 54(b).  Selective has filed a notice of appeal.  (*See* Notice, Case No. 14 C 8856, Dkt. No. 391.)

**F.    Related Case Motion**

In a hearing on September 30, 2019, this court "invite[d] a motion for reassignment [of this case] to Judge Kocoras as related."  (Sept. 2019 Hrg. Tr. [37] at 3:21-22.)  Plaintiff filed the motion before Judge Kocoras, but Hahn and Block opposed it.  (*See* Pl. Notification [29].)  On February 3, 2020, Judge Kocoras denied the motion, determining that "the [procedural] postures of the[]

---

[8]    The Complaint alleges that "Mepxy markers" were the product at issue in the Oregon Action.  (*See* Compl. ¶¶ 21-23.)  Thus, the Court assumes that Plaintiff's lawsuit against the "maker of Mepxy markers" was part of its effort to defend itself in the Oregon Action.

8

cases are not sufficiently similar such that they can be resolved in a single proceeding." (Feb. 2020 Order, Ex. A to Pl. Updated Notification [32] at 2 (citing Local Rule 40.4(b)).)

## DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In ruling on a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in a plaintiff's complaint as true and "draw[s] all reasonable inferences in the plaintiff's favor." *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018).

### A.   Intentional Interference with Contract

Defendants move to dismiss Plaintiff's intentional (tortious) interreference claim for myriad reasons, including that, according to Defendants, a corporation's employees and agents cannot tortiously interfere with its contract. (*See* Hahn Mot. to Dismiss ("Hahn Mot.") [20] at 2-3; Block Mot. to Dismiss ("Block Mot.") [24] at 5 (adopting and incorporating Hahn's arguments).) Plaintiff correctly responds that Illinois courts have carved out an exception to this rule where the employee or agent's conduct was "unjustified or malicious." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill. 2d 145, 156, 545 N.E.2d 672, 677, 137 Ill. Dec. 19, 24 (1989); *see* Pl. Opp. to Hahn Mot. ("Pl. Hahn Opp.") [25] at 2. But as discussed here, Plaintiff has not satisfied its burden to plead that Defendants engaged in such conduct. Thus, the court dismisses Plaintiff's intentional interference claim.

To state a claim for intentional (tortious) interference with contract under Illinois law, Plaintiff must allege "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's

9

intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs.*, 131 Ill. 2d at 154-55, 545 N.E.2d at 676, 137 Ill. Dec. at 23 (internal quotation marks omitted); *see also, e.g.*, *Webb*, 906 F.3d at 577. Illinois courts will "recognize a privilege in intentional interference with contract cases where the defendant was acting to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *HPI Health Care Servs.*, 131 Ill. 2d at 157, 545 N.E.2d at 677, 137 Ill. Dec. at 24. Plaintiff does not dispute that Hahn, as Selective's employee, and Block, as Selective's outside counsel, acted as Selective's agents, such that the conditional privilege applies. (*See* Pl. Hahn Opp. at 2-3.)

To overcome the conditional privilege and state a claim for intentional interference with contract, Plaintiff bears the burden of pleading that Defendants' "conduct was unjustified or malicious." *HPI Health Care Servs.*, 131 Ill. 2d at 156, 545 N.E.2d at 677, 137 Ill. Dec. at 24; *see also, e.g.*, *Webb*, 906 F.3d at 578; *Williams v. Shell Oil Co.*, 18 F.3d 396, 402-03 (7th Cir. 1994). "The term 'malicious,' in the context of interference with contractual relations cases, simply means that the interference must have been intentional and without justification." *HPI Health Care Servs.*, 131 Ill. 2d at 156-57, 545 N.E.2d at 677, 137 Ill. Dec. at 24. Unjustified conduct, in turn, means conduct that "is totally unrelated or even antagonistic to the interest which gave rise to defendant's privilege." *Id.*, 131 Ill. 2d at 158, 545 N.E.2d at 678, 137 Ill. Dec. at 25; *see also, e.g.*, *Webb*, 906 F.3d at 578; *Williams*, 18 F.3d at 403; Pl. Hahn Opp. at 2. For example, an agent "would not be justified in inducing a breach of contract solely for [his] gain, or solely for the purpose of harming the plaintiff, since such conduct would not have been done to further the [principal's] interests." *HPI Health Care Servs.*, 131 Ill. 2d at 158-59, 545 N.E.2d at 678, 137 Ill. Dec. at 25; *see Webb*, 906. "A defendant who is protected by a privilege is also unjustified in using illegal means to induce a breach of contract." *HPI Health Care Servs.*, 131 Ill. 2d at 159, 545 N.E.2d at 678, 137 Ill. Dec. at 25.

Plaintiff's allegations do not permit a reasonable inference that Defendants acted solely

for their own gain, solely for the purpose of harming Plaintiff, or contrary to Selective's interests. According to the Complaint, Defendants pursued their own interests by ignoring Selective's policy against adjusting and litigating the same claim; initiating and pursuing the declaratory judgment action that courts determined was legally flawed; and denying and delaying payments that they knew Plaintiff was owed. Defendants undertook some of this conduct to "defend[] their own actions," Plaintiff asserts (Compl. ¶ 96), but no supporting allegations reasonably permit this conclusion. Indeed, Plaintiff's assertion that Hahn ultimately suffered reputational harm from his handling of Plaintiff's insurance claim suggests that his conduct was inconsistent with his own personal interests. In any event, the allegations concerning Hahn's conduct are at least equally consistent with the conclusion that Hahn made unintentional but serious errors in judgment while working toward Selective's goals. Plaintiff also alleges that Block asked it to sign a release and suggests he did so because he knew his conduct was wrong. But without specifics concerning the terms or circumstances of the proposed release, the court is unable to conclude that such an inference is reasonable. Even assuming Plaintiff correctly characterizes Block's motives, an acknowledgement that his actions were wrong is also at least equally consistent with a conclusion that he undertook the actions to benefit Selective.

Plaintiff also fails to allege how Defendants' litigation strategy, including reducing what Selective owed and withholding payments to Plaintiff, would in fact have served Defendants' personal interests. True, Plaintiff alleges that Block's law firm at some point promoted him from associate to partner, but Plaintiff does not plead any factual content that would support the conclusion that partnership was awarded as a reward for Block's litigation activities rather than in spite of them. And although Plaintiff alleges that Defendants forced it to "litigate for every penny" or attempted to "drive [it] into bankruptcy before it could collect anything" (Compl. ¶ 99), the pleadings do not plausibly suggest that Defendants were acting for the sole purpose of causing Plaintiff harm. The Complaint, for example, has not identified Defendants' motives for harming Plaintiff, or any preexisting relationship with, or animus against Plaintiff before the insurance

11

dispute. Pleadings like these, which show no more than a "sheer possibility" that a defendant acted illegally, are insufficient. *Iqbal*, 556 U.S. at 678.

Plaintiff further undermines its intentional interference claim by recognizing in its pleading that Defendants' conduct was in fact intended to advance Selective's interests. For instance, Hahn allegedly wrote in his contemporaneous litigation notes that (1) he was trying to "negotiate . . . down" the amount Selective owed Plaintiff, and (2) the "decision not to defend" Plaintiff in the Oregon Action likely facilitated Plaintiff's "no-pay" settlement in that action, which in turn spared Selective from having to "contribute[] to the settlement." (*Id.* ¶¶ 53, 56.) These allegations show that the conduct Defendants allegedly undertook for personal gain was inextricably intertwined with their efforts to reduce Selective's coverage obligations, and therefore cannot be said to be "totally unrelated or . . . antagonistic to" Selective's interests. *HPI Health Care Servs.*, 131 Ill. 2d at 158, 545 N.E.2d at 678, 137 Ill. Dec. at 25. Plaintiff effectively speculates that Selective made a payment promptly after Richmond learned about Defendants' "wrongful" conduct (Compl. ¶ 73); but Plaintiff does not quote the deposition transcript that allegedly supports the point. (*See id.* ¶¶ 67-73.) And Selective's decision to compensate Plaintiff after Richmond's deposition does not establish that Defendants did not have Selective's interests at heart in refusing to do so earlier.

Judge Kocoras' findings in the federal action against Selective do not assist Plaintiff in pleading around Defendants' conditional privilege, either. Plaintiff notes Judge Kocoras's findings that the reasons for denying coverage set forth in Hahn's June 22, 2012 letter were "false, irrelevant or specious" and that Hahn was "hell bent" to deny Plaintiff coverage. (Pl. Hahn Opp. at 3 (quoting Compl. ¶¶ 30-31).) These findings, damning as they appear to be, do not suggest that Defendants acted solely for their personal interests. (*See, e.g.*, Compl. ¶ 31 (alleging that Judge Kocoras stated that, "[f]or *whatever reason*," Hahn was "hell bent" on denying coverage) (emphasis added).) Nor does Plaintiff allege that Judge Kocoras found that Defendants engaged in conduct that was "totally unrelated" or "antagonistic" to Selective's interests. *HPI Health Care*

*Servs.*, 131 Ill. 2d at 158, 545 N.E.2d at 678, 137 Ill. Dec. at 25. According to Plaintiff, Judge Kocoras determined that Hahn acted as the "de facto judge and jury" on Plaintiff's coverage claim, including by drawing his own conclusions concerning trade dress infringement based on a Google search. (*Id.* ¶ 29; *see* Dec. 2018 Selective Order at 5-7.) In addition, Plaintiff highlights Judge Kocoras' finding that in making a coverage recommendation to his supervisor, Hahn omitted a key allegation from the complaint in the Oregon Action. (*See* Compl. ¶¶ 31, 102.) But Plaintiff points to nothing in Judge Kocoras' opinion suggesting that this conduct was an "illegal means to induce" Selective to breach the insurance policy. *HPI Health Care Servs.*, 131 Ill. 2d at 159, 545 N.E.2d at 678, 137 Ill. Dec. at 25. To the contrary, as Plaintiff admits, Judge Kocoras attributed the conduct at issue to Selective in concluding that its failure to honor the insurance policy was vexatious and unreasonable, in violation of Section 155. (*See* Pl. Hahn Opp. at 4.) Judge Kocoras' findings only underscore Plaintiff's failure to adequately plead that Defendants acted intentionally and without justification, as those terms are construed for purposes of intentional interference claims.

Plaintiff cites several cases to support the argument that its pleadings overcome Defendants' conditional privilege, but none change the court's conclusion. In *Gardner Denver, Inc. v. National Indemnity Co.*, 2015 IL App (4th) 140713-U ¶¶ 6-9, 30, an Illinois appellate court determined in an unpublished opinion that a plaintiff stated a claim for tortious interference with a settlement agreement it had reached with its original insurer. The defendants were reinsurers that had assumed the original insurer's obligations and liabilities. *Id.* ¶ 7. The court found that the plaintiff overcame the defendants' conditional agency privilege with allegations that the original insurer had complied with the settlement terms for years until the defendant-reinsurers assumed control, and that the defendants were "attempt[ing] to reduce [their] liabilities in order to increase [their] profits." *Id.* ¶ 27. Here, Plaintiff has not similarly alleged that Defendants had a motive, independent of Selective's, to deny coverage.

Plaintiff cites two other non-binding authorities, but neither alters this court's conclusion.

13

In *Cox v. Calumet Public Schools District 132*, 180 F. Supp. 3d 556 (N.D. Ill. 2016), the court refused to dismiss a claim of tortious interference with employment against plaintiff's supervisor, where plaintiff alleged that in seeking to fire or discipline a "good employee," defendant acted contrary to the school district's interests. *Id.* at 565. Here, by contrast, Plaintiff has not adequately pleaded a disconnect between Defendants' actions and Selective's interests. In *Grecian Delight Foods, Inc. v. Great American Ins.Co. of New York*, 365 F. Supp. 3d 948, 956 (N.D. Ill. 2019), the court determined that the plaintiff might be able to state a claim for tortious interference because of its allegations that the defendant insurance adjusters induced a breach for "frivolous" reasons that contravened the policy's terms. But *Grecian Delight* relied heavily on *Gardner Denver*, which is distinguishable for the reasons just explained. Furthermore, the court in *Grecian Delight* did not deny a motion to dismiss the tortious interference claim. Rather, it considered whether the defendant insurer could meet the "high burden" of showing that plaintiff had "no chance of success" on its claim—necessary in order for defendant to establish fraudulent joinder of a non-diverse defendant and remain in federal court. *Id.* at 950. The fraudulent joinder standard is more favorable to plaintiffs than the 12(b)(6) standard. *See id.* at 952-53 (citing *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 764 (7th Cir. 2009)).

Plaintiff's allegations in this case do not overcome Defendants' conditional privilege to interfere with Selective's contract. The court therefore grants Defendants' motion to dismiss Plaintiff's intentional interference claim. The court notes, further, that the intentional interference claim is based on the same conduct as Plaintiff's Section 155 claim against Selective—namely, bad faith and unreasonable and vexatious conduct in denying insurance coverage—and seeks the same recovery. (*See* Compl. ¶ 109 (alleging that Defendants intentionally interfered with the insurance contract by (1) "issuing and persisting in a baseless denial of coverage in violation of Section 155"; (2) "instituting and prosecuting a baseless declaratory judgment action against [Plaintiff] and subsequent appeals in violation of Section 155"; (3) "withholding payment of undisputed fees and expenses incurred by [Plainitiff] in defending the Oregon Action to try to force

14

[Plaintiff] to settle its insurance claim against Selective for less than its true value"; and (4) continuously and unreasonably "refus[ing] to settle payment of [Plaintiff's] claim despite" the Illinois Circuit and Appellate courts' rulings that "Selective owed [Plaintiff] a duty to defend"); *compare, e.g.*, *id.* ¶¶ 28-31, 34-35, 66 (recounting the findings of fact underlying Judge Kocoras' determination that Selective violated Section 155).) "[S]ection 155 does not preempt a separate and independent tort action involving insurer misconduct," but "allegations of bad faith or unreasonable and vexatious conduct, without more," do not amount to an independent tort. *Cramer*, 174 Ill. 2d at 518, 527, 675 N.E.2d at 900, 904, 221 Ill. Dec. at 476, 480.

For the reasons already explained, Plaintiff has not stated a claim for intentional interference with contract. What remains are allegations that Defendants acted in bad faith, unreasonably, or vexatiously. Thus, Plaintiff's exclusive remedy lies in Section 155. *See id.*, 174 Ill. 2d at 527, 675 N.E.2d at 904, 221 Ill. Dec. at 480 (a plaintiff can bring an independent tort action for insurer misconduct only if it "actually alleges . . . the elements of a separate tort"); *see also, e.g.*, *W. Howard Corp. v. Indian Harbor Ins. Co.*, No. 1:10-CV-7857, 2011 WL 2582353, at *5 (N.D. Ill. June 29, 2011) (dismissing plaintiff's statutory and common law fraud claims because they were premised on "essentially the same conduct" alleged in its claims for breach of an insurance policy and violations of Section 155, such as failing to pay the claim, delaying the resolution of the claim, and "conduct[ing] a burdensome investigation").

Finally, the court notes that Plaintiff's intentional interference claim seeks the same recovery Plaintiff has already won. "[T]he law in Illinois is clear that a plaintiff is not entitled to double recovery." *Sommese v. Am. Bank & Trust Co., N.A.*, 2017 IL App (1st) 160530, ¶ 21; *see* Pl. Opp. to Block Mot. to Dismiss ("Pl. Block Opp.") [26] at 5 (conceding same). Judge Kocoras has already awarded Plaintiff everything it requests as consequential damages in this case. (*See* Nov. 2019 Damages Award at 11; Block Reply at 2.) The court recognizes that Plaintiff's Complaint requests disgorgement of Defendants' compensation under an unjust enrichment theory. But Plaintiff has not briefed this theory, and undeveloped arguments are waived. *See,*

15

*e.g.*, *United Cent. Bank v. Davenport Estate LLC*, 815 F.3d 315, 318 (7th Cir. 2016). Waiver aside, Plaintiff's disgorgement theory lacks merit. Where, as here, a plaintiff "seek[s] recovery of a benefit that was transferred to the defendant by a third party," the plaintiff must show that (1) "the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead"; (2) "the defendant procured the benefit from the third party through some type of wrongful conduct"; or (3) "the plaintiff for some other reason had a better claim to the benefit than the defendant." *HPI Health Care Servs.*, 131 Ill. 2d at 161-62, 545 N.E.2d at 679, 137 Ill. Dec. at 26; *see also Banco Panamericano, Inc. v. City of Peoria, Ill.*, 880 F.3d 329, 333 (7th Cir. 2018) (same). Plaintiff is entitled to recovery of its losses; it has not shown that it performed services on Selective's behalf, did Hahn's and Block's work for them, or has any other superior claim to Defendants' compensation. Punitive damages may be available for an intentional interference claim (*see* Pl. Block Opp. at 4), but the Complaint does not seek a punitive damages award, and such an award is unavailable in Illinois absent compensatory damages, *see, e.g.*, *Mitchell v. Elrod*, 275 Ill. App. 3d 357, 362, 655 N.E.2d 1104, 1108, 211 Ill. Dec. 721, 725 (1st Dist. 1995) (citing *Hackett v. Smelsey*, 77 Ill. 109 (1875)). As compensatory damages are unavailable here, Plaintiff has not identified any damages it suffered arising solely out of Defendants' conduct. Plaintiff's intentional interference claim is dismissed.

**B.     Claims for Civil Conspiracy and Aiding and Abetting**

Under Illinois law, civil conspiracy and aiding and abetting are not independent torts. *See, e.g.*, *Chadha v. N. Park Elementary Sch. Ass'n*, 2018 IL App (1st) 171958, ¶ 58; *Thomas v. Fuerst*, 345 Ill. App. 3d 929, 936, 803 N.E.2d 619, 625, 281 Ill. Dec. 215, 221 (1st Dist. 2004). Because Plaintiff fails to state a claim for intentional interference with contract, the court grants Defendants' motion to dismiss the derivative civil conspiracy and aiding and abetting claims. *See Chadha*, 2018 IL App (1st) 171958 ¶ 58 (dismissing claims for civil conspiracy and aiding and abetting that were "premised on" an unsuccessful tortious interference claim).

C.	**Defendant Block's Request for Sanctions Under 28 U.S.C. § 1927**

Invoking 28 U.S.C. § 1927, Block asks the court awarding him the attorneys' fees he incurred in defending this action. Section 1927 provides that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "An attorney runs afoul of § 1927 if he: (1) act[s] in an objectively unreasonable manner by engaging in a serious and studied disregard for the orderly process of justice; or (2) files a claim that lacks a plausible legal or factual basis [or] justification." *Webb*, 906 F.3d at 583 (internal quotation marks omitted).

Block argues that Plaintiff's decision to file this lawsuit was motivated by a desire to obtain a double recovery or retaliate against him for his representation of Selective, and was therefore objectively unreasonable. (*See* Block Mot. at 14.) On this limited record, the court cannot find that Plaintiff's motives were retaliatory, and Plaintiff concedes that it is not entitled to a double recovery. To the extent Block contends this lawsuit vexatiously multiplies the proceedings, the court reminds him that he opposed Plaintiff's motion to reassign this case to Judge Kocoras as a related action. The court is likewise unmoved by Block's contention that Plaintiff violated its duty under Section 1927 to dismiss claims that are no longer viable. (*Id.* at 13-14 (citing *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006).) The court dismisses Plaintiff's claims, but declines to find that Plaintiff lacked any colorable argument that they were viable. Block's only argument to the contrary relies on speculation concerning Plaintiff's motives. Block's request for sanctions under Section 1927 is denied.

**CONCLUSION**

For the foregoing reasons, the court grants Defendant David G. Hahn's Motion to Dismiss [20], grants Defendant Drew L. Block's Motion to Dismiss [24], and denies Defendant Block's request for sanctions under 28 U.S.C. § 1927.

ENTER:

Dated: August 19, 2020

_____
REBECCA R. PALLMEYER
United States District Judge